## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

RICHARD M. CUZZO,

                 Plaintiff,

     v.

KILOLO KIJAKAZI,[1]

                 Defendant.

CIVIL ACTION NO. 3:21-CV-00447

(MEHALCHICK, M.J.)

### MEMORANDUM

Plaintiff Richard M. Cuzzo ("Cuzzo") brings this action under section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), for judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act. (Doc. 1). This matter has been referred to the undersigned United States Magistrate Judge on consent of the parties, pursuant to the provisions of 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 6). For the reasons expressed herein, and upon detailed consideration of the arguments raised by the parties in their respective briefs, it is hereby ordered that the Commissioner's decision be **VACATED** and the case be **REMANDED** to the Commissioner to fully develop the record, conduct a new administrative hearing, and appropriately evaluate the evidence pursuant to sentence four of 42 U.S.C. § 405(g).

---

[1] The Court has amended the caption to replace, as the named defendant, Acting Social Security Commissioner Andrew Saul with his successor, Social Security Commissioner Kilolo Kijakazi. *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.").

## I.   BACKGROUND AND PROCEDURAL HISTORY

On July 31, 2018, Cuzzo protectively filed an application for Title II disability insurance benefits, claiming disability beginning July 3, 2018.[2] (Doc. 13-6, at 2). The Social Security Administration initially denied the application on October 9, 2018, prompting Cuzzo's request for a hearing, which Administrative Law Judge ("ALJ") Margaret L. Pecoraro held on February 18, 2020. (Doc. 13-2, at 21). In a written decision dated September 8, 2020, the ALJ determined that Cuzzo is not disabled and therefore not entitled to benefits under Title II. (Doc. 13-2, at 31). On January 11, 2021, the Appeals Council denied Cuzzo's request for review. (Doc. 13-2, at 2).

On March 12, 2021, Cuzzo filed the instant action. (Doc. 1). The Commissioner responded on July 13, 2021, providing the requisite transcripts from Cuzzo's disability proceedings. (Doc. 12; Doc. 13). The parties then filed their respective briefs with Cuzzo alleging two bases for reversal or remand. (Doc. 14; Doc. 17; Doc. 18).

## II.   STANDARDS OF REVIEW

To receive benefits under Title II of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1509. To satisfy this requirement, a

---

[2] The ALJ states that Cuzzo filed his application for Title II benefits on July 3, 2018, alleging disability beginning July 13, 2018. (Doc. 13-2, at 21). However, a review of the record indicates that Cuzzo's application was completed on July 31, 2018, and amended on August 14, 2018. (Doc. 13-6, at 2, 4). In his amended application, Cuzzo states that he became unable to work because of his disability on July 3, 2018. (Doc. 13-6, at 2).

claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).[3] Additionally, to be eligible to receive Title II benefits, a claimant must be insured for disability insurance benefits. 42 U.S.C. § 423(a)(1)(a); 20 C.F.R. § 404.131.

A.   ADMINISTRATIVE REVIEW

In evaluating whether a claimant is disabled, the "Social Security Administration, working through ALJs, decides whether a claimant is disabled by following a now familiar five-step analysis." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 200–01 (3d Cir. 2019). The "burden of proof is on the claimant at all steps except step five, where the burden is on the Commissioner of Social Security." *Hess*, 931 F.3d at 201; *see* 20 C.F.R. § 404.1512(a)(1). Thus, if the claimant establishes an inability to do past relevant work at step four, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform consistent with his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1512(a)(1).

B.   JUDICIAL REVIEW

The Court's review of a determination denying an application for Title II benefits is limited "to considering whether the factual findings are supported by substantial evidence." *Katz v. Comm'r Soc. Sec.*, No. 19-1268, 2019 WL 6998150, at *1 (3d Cir. Dec. 20, 2019). Substantial evidence "does not mean a large or considerable amount of evidence, but rather

---

[3] A "physical or mental impairment" is defined as an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

- 3 -

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). The quantum of proof is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial if the ALJ ignores countervailing evidence or fails to resolve a conflict created by such evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

The question before the Court, therefore, is not whether Cuzzo is disabled, but whether the Commissioner's determination that Cuzzo is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). If "the ALJ's findings of fact . . . are supported by substantial evidence in the record," the Court is bound by those findings. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

III.   **THE ALJ'S DECISION**

In her written decision, the ALJ determined that "the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act." (Doc. 13-2, at 31). The ALJ reached this conclusion after proceeding through the five-step sequential analysis provided in 20 C.F.R. § 404.1520(a)(4).

A.   STEP ONE

At step one of the five-step analysis, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If a claimant is engaging in substantial gainful activity, the claimant is not disabled, regardless of age, education, or work experience. 20 C.F.R. § 404.1520(b). Substantial gainful activity is defined as work activity requiring significant physical or mental activity and resulting in pay or profit. 20 C.F.R. § 404.1572(a)–(b). The ALJ must consider only the earnings of the claimant. 20 C.F.R. § 404.1574(a)(2). Here, the ALJ determined that "[Cuzzo] has not engaged in substantial gainful activity since July 13, 2018, the alleged onset date."[4] (Doc. 13-2, at 24).

B.   STEP TWO

At step two, the ALJ must determine whether the claimant has a medically determinable impairment—or a combination of impairments—that is severe and meets the 12-month duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ determines that a claimant does not have an "impairment or combination of impairments which significantly limits" the claimant's "physical or mental ability to do basic work activities," the ALJ will find that the claimant does not have a severe impairment and is therefore not disabled. 20

---

[4] The Court, again, notes that Cuzzo's alleged onset date is July 3, 2018. (Doc. 13-6, at 2).

C.F.R. § 404.1520(c). If, however, a claimant establishes a severe impairment or combination of impairments, the ALJ proceeds to consider step three. Here, the ALJ found that Cuzzo had a severe impairment of neurocognitive disorder due to traumatic brain injury. (Doc. 13-2, at 24). Additionally, the ALJ found that Cuzzo has the following non-severe impairments: neck and back pain, headaches, facial palsy, left-hand numbness, and an aortic aneurysm. (Doc. 13-2, at 24).

C.    STEP THREE

At step three, the ALJ must determine whether the severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in the version of 20 C.F.R. § Pt. 404, Subpt. I, App. 1 that was in effect on the date of the ALJ's decision. 20 C.F.R. § 404.1520(a)(4)(iii). The sections in this appendix are commonly referred to as "listings." Here, the ALJ determined that Cuzzo's impairment does not meet or equal the severity of a listed impairment. (Doc. 13-2, at 24-26). The ALJ considered listing 12.02 – Neurocognitive disorders. (Doc. 13-2, at 25-26).

D.    RESIDUAL FUNCTIONAL CAPACITY

Between steps three and four, the ALJ evaluates the claimant's residual functional capacity ("RFC"), crafted upon consideration of all the evidence presented. At this intermediate step, the ALJ considers all of the claimant's symptoms and "the extent to which [they] can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). This involves a two-step inquiry according to which the ALJ must (1) determine whether an underlying medically determinable mental impairment or impairments could reasonably be expected to produce the claimant's symptoms; and, if so, (2) evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to

- 6 -

determine the extent to which they limit the claimant's functional limitations. *See* 20 C.F.R. § 404.1529(b)–(c).

Here, the ALJ found that while Cuzzo's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Cuzzo's statements concerning the nature, intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Doc. 13-2, at 27). The ALJ concluded that Cuzzo has the RFC "to perform medium work as defined in 20 CFR 404.1567(c) except he is limited to simple, routine, repetitive tasks not at a production rate pace, and to simple decision-making. He is limited to adapting to changes in a simple routine work setting." (Doc. 13-2, at 26).

E.    STEP FOUR

Step four requires the ALJ to determine whether the claimant had, during the relevant period, the RFC to perform the requirements of his or her past relevant work regardless of the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(iv). Past relevant work is work that the claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn the requirements of the work. 20 C.F.R. § 404.1520(a)(4)(iv). The ALJ considers whether the claimant retains the capacity to perform the particular functional demands and job duties of the past relevant work, either as the claimant actually performed the work or as ordinarily required by employers throughout the national economy. *Garibay v. Comm'r Of Soc. Sec.*, 336 F. App'x 152, 158 (3d Cir. 2009) (quoting SSR 82–6). "If the claimant can perform his past relevant work despite his limitations, he is not disabled." *Hess*, 931 F.3d at 202 (citing 20 C.F.R. § 404.1520(a)(4)(iv)). Here, the ALJ determined that Cuzzo is unable to perform any past

relevant work. (Doc. 13-2, at 30). Thus, the ALJ proceeded to step five of the sequential analysis. (Doc. 13-2, at 30).

F.   STEP FIVE

At step five of the sequential analysis, the ALJ considers the claimant's age, education, and work experience to determine whether the claimant can make the adjustment to other work. 20 C.F.R. § 404.1520(a)(4)(v). If a claimant can adjust to other work, he or she will not be considered disabled. 20 C.F.R. § 404.1520(a)(4)(v). Here, considering Cuzzo's age, education, work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Cuzzo can perform. (Doc. 13-2, at 30-31). In making this determination, the ALJ relied on the expertise of the vocational expert, who testified that Cuzzo can perform the requirements of occupations, such as a kitchen helper, a dining room attendant, and a laundry worker all with positions ranging from 49,000 to 380,000 in the national economy. (Doc. 13-2, at 31). Accordingly, the ALJ determined that Cuzzo is not disabled and denied his application for benefits. (Doc. 13-2, at 31).

IV.   **DISCUSSION**

Cuzzo advances two arguments on appeal. (Doc. 13, at 2). Specifically, Cuzzo argues that the ALJ erred by (1) failing to consider his medical records with the Veterans' Administration ("VA"); and by (2) finding he had an RFC to perform medium work. (Doc. 14, at 3). In response, the Commissioner maintains that the ALJ's decision is supported by substantial evidence and is in accordance with the law and regulations. (Doc. 17, at 2).

A.   SUBSTANTIAL EVIDENCE DOES NOT SUPPORT THE ALJ'S RFC DETERMINATION.

Cuzzo asserts that the ALJ erred in finding he had the RFC to perform medium work as there is no support on the record for such a finding. (Doc. 14, at 6-10). Cuzzo contends

that the ALJ erroneously relied upon the medical opinion of Dr. Basnayake when finding he had the RFC to perform medium work as Dr. Basnayake's opinion does not support a medium RFC. (Doc. 14, at 6-7). Instead, Cuzzo argues that the ALJ inserted her own lay interpretation of the medical evidence as "there was not any other medical evidence of record to support the ALJ's medium work RFC." (Doc. 14, at 7-8). The Commissioner responds that Cuzzo testified that he had no physical restrictions and received no treatment for any physical conditions and that the objective medical evidence, Cuzzo's daily activities, and medical opinions support the ALJ RFC determination of medium work. (Doc. 17, at 15-20).

Assessing a claimant's RFC falls within the purview of the ALJ. 20 C.F.R. § 404.1546(c); SSR 96-8p, 1996 WL 374184 (S.S.A. July 2, 1996). "[RFC] is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v. Comm'r of Soc. Sec.,* 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 (3d Cir. 1999)). Specifically, one's RFC reflects the *most* that an individual can still do, despite his or her limitations, and is used at steps four and five to evaluate the claimant's case. 20 C.F.R. §§ 404.1520, 404.1545; SSR 96-8P, 1996 WL 374184 at *2. In crafting the RFC, the ALJ must consider all the evidence of record, including medical signs and laboratory findings, daily activities, medical source statements, and a claimant's medical history. SSR 96-8p, 1996 WL 374184, at *5; *see also Mullin v. Apfel*, 79 F. Supp. 2d 544, 548 (E.D. Pa. 2000). An ALJ's RFC findings, however, must be supported by the medical evidence. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986). "[O]nce the ALJ has made this [RFC] determination, [a court's] review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence." *Black v. Berryhill*, No. 16-1768, 2018 WL 4189661 at *3 (M.D. Pa. Apr.

13, 2018).

In *Cotter v. Harris*, the Circuit Court clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected: "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." 642 F.2d 700, 704, 706-707 (3d Cir. 1981). However, the ALJ need not undertake an exhaustive discussion of all the evidence. *See, e.g., Knepp*, 204 F.3d at 83. "There is no requirement that the ALJ discuss in her opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004).

In making the RFC determination, "the ALJ must consider all evidence before him" and "evaluate every medical opinion . . . receive[d]." *Burnett*, 220 F.3d at 121 (citations omitted); 20 C.F.R. § 404.1527(c); *see also Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) ("The Secretary must 'explicitly' weigh all relevant, probative and available evidence. . . . The Secretary may properly accept some parts of the medical evidence and reject other parts, but she must consider all the evidence and give some reason for discounting the evidence she rejects."). The Social Security Regulations define "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including . . . symptoms, diagnosis and prognosis, what [the claimant] can still do despite [his or her] impairment(s), and … physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). Social Security Ruling ("SSR") 96-5p further clarifies that "opinions from any medical source on issues reserved to the Commissioner must never be ignored," and specifically states that the ALJ's "decision must

explain the consideration given to the treating source's opinion(s)."[5] SSR 96-5p, 1996 WL 374183, at *3, *6 (July 2, 1996).

As this matter involves a claim filed after March 27, 2017, the new regulatory framework governing the evaluation of medical opinions applies to the ALJ's evaluation of the medical opinions in the record. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132-01 (Mar. 27, 2017)); *see also* 82 Fed. Reg. 15263 (March 27, 2017); 82 Fed. Reg. 16869 (corrective notice) (explaining that SSR 96-2p and 96- 5p do not apply to newly filed or pending claims after March 27, 2017). The ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Under the new regulations, rather than assigning weight to medical opinions, the Commissioner will articulate "how persuasive" he or she finds the medical opinions. 20 C.F.R. § 404.1520c(b). The Commissioner's consideration of medical opinions is guided by the following factors: supportability; consistency; relationship with the claimant (including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the examining relationship); specialization of the medical source; and any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1520c(c). The most important of these factors are

---

[5] SSRs are agency rulings published under the authority of the Commissioner and are binding on all components of the Social Security Administration. 20 C.F.R. § 402.35(b)(1). SSRs do not have the force and effect of the law or regulations but are to be "relied upon as precedents in determining other cases where the facts are basically the same." *Heckler v. Edwards*, 465 U.S. 870, 873, n.3 (1984).

the "supportability" of the opinion and the "consistency" of the opinion, which are the same factors that formed the foundation of the rule which prioritized the opinion of a treating source. *Densberger v. Saul*, No. 1:20-CV-772, 2021 WL 1172982, at *8 (M.D. Pa. Mar. 29, 2021) (citing *Andrew G. v. Comm'r of Soc. Sec.*, No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.NY. Oct.1, 2020)); 20 C.F.R. § 404.1520c(b)(2).

The ALJ must explain how he or she considered the "supportability" and "consistency" of a medical source's opinion. 20 C.F.R. § 404.1520c(b)(2). Generally, the ALJ may, but is not required to, explain his or her consideration of the other factors, but if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors. 20 C.F.R. § 404.1520c(b)(3). "[W]hen the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered [the remaining] factors . . . ." *Densberger*, 2021 WL 1172982, at *8. To facilitate judicial review, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests" and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Cotter*, 642 F.2d 700, at 706-707.

Here, the ALJ found that Cuzzo has the RFC to perform medium work as defined in 20 CFR 404.1567(c) subject to certain non-exertional limitations. (Doc. 13-2, at 26). "Medium work requires lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c). SSR 83-10 notes that "[b]eing able to do frequent lifting or carrying of objects weighing up to 25 pounds is often more critical than being able to lift up to 50 pounds at a time." SSR 83-10, 1983 WL 31251,

at *6. "'Frequent' means occurring from one-third to two-thirds of the time." SSR 83-10, 1983 WL 31251, at *6.

In making the RFC determination, the ALJ considered Cuzzo's symptoms and "the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," including opinion evidence. (Doc. 13-2, at 26). The ALJ found consultative examiner Dr. Basnayake's opinion persuasive. (Doc. 13-2, at 29). Dr. Basnayake reported that Cuzzo "has mild to moderate limitations in prolonged standing, walking, climbing, bending, carrying, and lifting, no limitations for prolonged sitting, squatting, or kneeling, and should avoid driving, operating machinery, climbing when he has headaches." (Doc. 13-2, at 29; Doc. 13-10, at 84). The ALJ found that these "mild physical limitations [were] consistent with medium [and were] work persuasive." (Doc. 13-2, at 29). Further, the ALJ held this opinion to be consistent and supported by Dr. Basnayake's examination and with the medical record. (Doc. 13-2, at 29). The ALJ noted Dr. Basnayake's opinion that Cuzzo had "a normal gait, full range of motion of extremities, normal reflexes, 5/5 strength, some restrictions in spinal range of motion, and found the claimant could walk on heels and toes without difficulty," which supported a finding of mild limitations and a limitation of medium work. (Doc. 13-2, at 29; Doc. 13-10, at 83-84). The ALJ also noted Cuzzo's testimony that reported no significant physical limitations, that he runs errands with his wife, that he has no problems with personal care, and that he does household chores, was consistent with a limitation of medium work. (Doc. 13-2, at 29; Doc. 13-7, at 13-15). However, Dr. Basnayake did not opine what amount Cuzzo could lift or how long he could stand. (Doc. 13-10, at 82-84). The ALJ did not discuss how Dr. Basnayake's opinion that Cuzzo had a mild to moderate limitation in lifting demonstrated that Cuzzo could do medium

work, which requires the ability to lift no more than 50 pounds at a time and frequently carry up to twenty-five pounds. (Doc. 13-2, at 29; Doc. 13-10, at 84); 20 C.F.R. § 404.1567.

Notably, the ALJ found the remaining medical opinion regarding Cuzzo's physical limitations "unpersuasive." (Doc. 13-2, at 2). State agency consultant, Dr. Abueg, suggested that Cuzzo is limited to light work with restrictions of occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, crawling, climbing ladders, ropes, or scaffolds. (Doc. 13-2, at 29; Doc. 13-3, at 10). Further, Dr. Abueg opined that Cuzzo could occasionally lift or carry 20 pounds, frequently lift or carry 10 pounds, stand and/or walk for a total of about six hours in an eight-hour workday, and sit for a total of about six hours in an eight-hour work day. (Doc. 13-3, at 10). The ALJ found this opinion unpersuasive and reasoned that Dr. Abueg's notes indicate "normal strength, mild facial numbness, a normal gait, and a limited spinal range of motion, better supporting a limitation to medium work" and that his opinion was inconsistent with the opinion of Dr. Basnayake. (Doc. 13-2, at 29; Doc. 13-3, at 11). In his opinion, Dr. Abueg's recounts the medical records from the VA and Dr. Basnayake's exam.[6] (Doc. 13-3, at 11). Dr. Abueg specifically indicated an amount to which Cuzzo could lift and found that he could occasionally lift and/or carry 20 pounds and could frequently carry 10 pounds. (Doc. 13-3, at 10). However, the ALJ omits these findings from her opinion.

---

[6] Although Dr. Abueg does not explicitly state that he considered Dr. Basnayake's exam, the consultative examiner report in question was given on September 21, 2018, from Industrial Medicine Associates. (Doc. 13-3, at 5). Dr. Basnayake's opinion is dated September 21, 2018, and is from Industrial Medicine Associates. (Doc. 13-10, at 82).

Given the ALJ's reliance on Dr. Basnayake's opinion and the definition of medium work, the Court cannot conclude the ALJ's RFC assessment is supported by Dr. Basnayake's opinion. The Commissioner's argument that the ALJ's reliance on Dr. Basnayake's opinion is supported because the ALJ explained the consistency and supportability of the opinion regarding a mild physical limitation, which is consistent with medium work, does not address the medium work requirement of lifting no more than 50 pounds at a time and frequent carrying of objects weighing up to twenty-five pounds. 20 C.F.R. § 404.1567(c); (Doc. 17, at 17-18). The ALJ does not point to any evidence on the record that states that Cuzzo could lift no more than 50 pounds at a time and frequently lift or carry up to 25 pounds.

Dr. Basnayake indicates that Cuzzo has mild to moderate limitations in lifting. (Doc. 13-10, at 84). Such a finding does not necessarily indicate that Cuzzo can lift an amount consistent with medium work limitations. 20 C.F.R. § 404.1567(c). Further, Dr. Basnayake's opinion does not explicitly refute Dr. Abueg's opinion that Cuzzo could occasionally lift or carry 20 pounds, frequently lift or carry 10 pounds, stand and/or walk for a total of about six hours in an eight-hour workday, and sit for a total of about six hours in an eight-hour work day. (Doc. 13-3, at 10). Additionally, in his opinion, Dr. Abueg noted Dr. Basnayake's opinion that Cuzzo has "mild to moderate limitations for . . . carrying [and] lifting." (Doc. 13-3, at 5; Doc. 13-10, at 84).

Cuzzo's testimony and medical records do not indicate that he can lift more than 50 pounds and frequently carry 25 pounds. Cuzzo indicates that he cannot pick up heavy objects due to his sore back. (Doc. 13-7, at 17). A report from October 19, 2018, indicates that his conditions impact his ability to lift and that he had a lot of pain when he attempted to lift his arm. (Doc. 13-11, at 102, 111). Thus, the ALJ failed to support her finding that Cuzzo could

perform medium work because she failed to point to any medical evidence that stated his specific lifting abilities. *See* 20 C.F.R. § 404.1567(c) ("Medium work requires lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."); *see also Ray v. Berryhill,* No. 1:18-CV-00567, 2018 WL 7821004, at *6-*7 (M.D. Pa. Dec. 21, 2018), *report and recommendation adopted,* 2019 WL 1299269 (M.D. Pa. Mar. 21, 2019) (remanding ALJ's unfavorable decision in part because ALJ did not provide support for his proposed restriction of carrying up to 50 pounds); *see Reitz v. Berryhill*, No. 3:18-CV-921, 2018 WL 5113167, at *7 (M.D. Pa. Oct. 19, 2018) (remanding ALJ's unfavorable decision where ALJ failed to discuss twenty-pound arm lifting restriction assessed by examining sources).

The "ALJ is free to accept some medical evidence and reject other evidence, provided that he provides an explanation for discrediting the rejected evidence." *Zirnsak v. Colvin*, 777 F.3d 607, 614 (3d Cir. 2014) (citing *Adorno,* 40 F.3d at 48). Further, assessing a claimant's RFC falls within the purview of the ALJ. 20 C.F.R. § 404.1546(c); SSR 96-8p, 1996 WL 374184 (S.S.A. July 2, 1996). However, the ALJ's role in the administrative process is to translate the doctors' medical determinations – for example, that the claimant can lift five, 20, 50, or 100 pounds, and can stand for 30 minutes, two hours, six hours, or eight hours – into a residual functional capacity determination. *Decker v. Berryhill*, 2018 WL 4189662, at *5-6 (M.D. Pa. 2018) (quoting CAROLYN A. KUBITSCHEK & JON C. DUBLIN, SOCIAL SECURITY DISABILITY LAW AND PROCEDURE IN FEDERAL COURTS 344-45 (2014)) (internal citation omitted). The ALJ's determination is mechanical. *Decker*, 2018 WL 4189662, at *5. It is not the ALJ's responsibility to determine how much weight a claimant can lift, how long a claimant can walk, or any other physical capability; the ALJ takes the medical professionals' determinations of such issues and translates them into a finding of

sedentary, light, medium, or heavy work. *Decker*, 2018 WL 4189662, at *5.

Here, The ALJ found the opinion of Dr. Basnayake persuasive and the opinion of Dr. Abueg unpersuasive. (Doc. 13-2, at 29). Although the ALJ explained the supportability and consistency of the two opinions, she gave no explanation for the omission of any specific limitations regarding the amount of weight Cuzzo could lift as is required to perform medium work. (Doc. 13-2, at 29); *see* 20 C.F.R. § 404.1567(c). Nor did the ALJ address the medium work requirement of frequently being able to lift up to twenty-five pounds, a requirement which SSR 83-10 explains is "often more critical" than the fifty-pound consideration. 1983 WL 31251, at *6; *see* 20 C.F.R. § 404.1567(c). Instead, the ALJ relied upon Dr. Basnayake's opinion that Cuzzo has "mild to moderate limitations in prolonged . . . carrying[] and lifting." (Doc. 13-2, at 29; Doc. 13-10, at 84).

More of an explanation was required regarding Dr. Basnayake's mild to moderate lifting and carrying restrictions due to the general nature of the opinion. The ALJ restricted Cuzzo to medium work, which requires "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c). However, the ALJ failed to point to any evidence on the record demonstrating such lifting restrictions. Further, the ALJ found that Dr. Abueg's opinion indicated normal strength and was inconsistent with his examination and the record. (Doc. 13-2, at 29). However, the ALJ did not discuss Dr. Abueg's findings of specific lifting and/or carrying restrictions of 20

pounds occasionally and 10 pounds frequently indicating an interpretation more consistent with light work.[7] (Doc. 13-2, at 29; Doc. 13-3, at 10).

As the ALJ did not specify how much Cuzzo could lift in her opinion, the Court cannot determine if such an error would be harmless. Additionally, the ALJ found that transferability of job skills was not material to the determination of disability because the Medical-Vocational Rules supported a finding that Cuzzo was not disabled whether or not he had transferable job skills. (Doc. 13-2, at 30). The Court notes the vocational expert testified that an individual who was limited to light work with Cuzzo's limitations and past work experience would not have any transferable skills. (Doc. 13-2, at 65-66). Accordingly, if Cuzzo had been limited to light work, as was suggested by Dr. Abueg, the Medical Vocational Rules would have required a finding that he was disabled, as he has a high school education, was of advanced age on the alleged onset date, and was limited to unskilled work with no transferable skills.[8] *See* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 202.04; *see also Sykes v.*

---

[7] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."

20 C.F.R. § 404.1567(b)

[8] Upon review of the record, Cuzzo was 63 years old on the alleged onset date placing him in the category of a person of advanced age and a person closely approaching retirement age. 20 C.F.R. § 404.1563(e), 404.1568(d)(4); (Doc. 13-7, at 2). Further, the vocational expert opined that an individual with Cuzzo's age, education, and past work experience who was

*Apfel*, 228 F.3d, 259, 263 (3d Cir. 2000) ("When the four factors in the claimant's case correspond exactly with the four factors set forth in the grids, the ALJ must reach the result the grids reach").

On this score, the Court finds that the ALJ's determination that Cuzzo could perform medium work is not supported by substantial evidence. The discussion of the evidence was not sufficient to permit meaningful judicial review of the ALJ's decision. *See Barnett*, 220 F.3d at 120 (holding that there could be no meaningful judicial review where the ALJ did not "discuss[ ] the evidence" or explain the reasoning behind the determination). There is no evidence in the record to support the ALJ's proposed carrying limitation because a finding of "medium work" requires "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds," but the record contains no medical evidence suggesting Cuzzo can perform such tasks. *See* 20 C.F.R. § 404.1567(b) & (c); (Doc. 13-2, at 10). In sum, the ALJ noticeably fails to discuss Cuzzo's specific lifting and/or carrying restrictions and its significance in the context of the ability to perform medium work as evidenced by the definition of medium work and the vocational expert's testimony. (Doc. 13-2, 64-66).On remand, the distinction between medium work and light work and Cuzzo's lifting and carrying abilities warrant further consideration and detailed discussion.

---

limited to light work with non-exertional restrictions detailed in the RFC would not have transferable skills and that he would not be able to perform work at a semi-skilled level. (Doc. 13-2, at 64-66).

B.   THE COURT DECLINES TO ADDRESS CUZZO'S REMAINING ARGUMENTS.

Because the Court finds that the ALJ's decision must be vacated based on her failure to include specific lifting and carrying limitations, the Court declines to address Cuzzo's remaining arguments. "A remand may produce different results on these claims, making discussion of them moot." *Burns v. Colvin*, 156 F.Supp.3d 579, 598 (M.D. Pa. 2016). The Court's evaluation of Cuzzo's additional contentions could be futile given that the ALJ's reconsideration of the RFC may yield a different result.

V.   REMEDY

As a final matter, the Court addresses whether this case should be remanded to the Commissioner for further administrative proceedings or whether reversal and an award of benefits is appropriate. The Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the case for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100–01 (1991). However, the Third Circuit has advised that benefits should only be awarded where "the administrative record of the case has been fully developed and when substantial evidence in the record as a whole indicates that the claimant is disabled and entitled to benefits." *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000); *see e.g. Fla. Power & Light Co. v. Lorion,* 470 U.S. 729, 744 (1985) ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."). In this case, the appropriate measure is to **REMAND** for further proceedings.

- 20 -

VI.     **CONCLUSION**

Based on the foregoing, the Commissioner's decision to deny Cuzzo benefits is **VACATED** and the case is **REMANDED** to the Commissioner to fully develop the record, conduct a new administrative hearing, and appropriately evaluate the evidence pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court will be directed to **CLOSE** this case.

An appropriate Order follows.


**Dated: August 26, 2022**                         *s/ Karoline Mehalchick*
                                                                   **KAROLINE MEHALCHICK**
                                                                   **Chief United States Magistrate Judge**